[No. 47472-9.   En Banc.   January 14, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. BRENT R. ANDERSON, *Petitioner.*

C. E. Hormel and Underwood, Campbell, Brock & Cerutti, P.S., by A. O. Clemons, Jr., for petitioner.

Richard W. Miller, Prosecuting Attorney, for respondent.

DIMMICK, J.—In 1977, petitioner was convicted of first degree murder pursuant to RCW 9A.32.030(1)(b)[1] for the scalding death of his stepdaughter, Tanya. This court reversed the conviction holding that "extreme indifference" was an inappropriate charge. State v. Anderson, 94 Wn.2d 176, 616 P.2d 612 (1980) (Anderson I). Thereafter, the State filed an information based upon the same incident charging petitioner with first degree premeditated murder pursuant to RCW 9A.32.030(1)(a).[2] Petitioner's motion to dismiss the charge on the grounds of double jeopardy was denied by the trial court. We reverse, however, on different grounds and dismiss the information without prejudice.

■ Dismissal is mandated by the State's failure to comply with Superior Court Criminal Rule 4.3 relating to joinder of offenses. CrR 4.3(c)(1) provides that offenses are related if based upon the same conduct and are within the jurisdiction and venue of the same court. The bathtub scalding death described in Anderson I was the basis for

---

[1] RCW 9A.32.030 reads in part: "Murder in the first degree. (1) A person is guilty of murder in the first degree when:

". . .

"(b) Under circumstances manifesting an extreme indifference to human life, he engages in conduct which creates a grave risk of death to any person, and thereby causes the death of a person . . ."

[2] RCW 9A.32.030 reads in part: "Murder in the first degree. (1) A person is guilty of murder in the first degree when:

"(a) With a premeditated intent to cause the death of another person, he causes the death of such person or of a third person . . ."

both charges of first degree murder. The two charges brought against petitioner, one based upon RCW 9A.32-.030(1)(b) and the other based upon RCW 9A.32.030(1)(a), are related and could have been joined in the same information. *See State v. Mitchell,* 29 Wn.2d 468, 188 P.2d 88 (1947).

The consequences of the State's failure to join related offenses are set forth in CrR 4.3(c)(3):

> A defendant who has been tried for one offense may thereafter move to dismiss a charge for a related offense . . . The motion to dismiss . . . shall be granted unless the court determines that because the prosecuting attorney was unaware of the facts constituting the related offense or did not have sufficient evidence to warrant trying this offense at the time of the first trial, or for some other reason, the ends of justice would be defeated if the motion were granted.

The State asserts that we should not dismiss the information under CrR 4.3(c)(3) because it has developed new evidence to prove premeditated murder that was unavailable during the first trial. The new evidence was by way of an affidavit presented at oral argument concerning petitioner's relationship with prior wives and others. The most recent incident described took place in 1974, which, we believe, was prior to the birth of Tanya. The State's affidavit also avers that the State plans to call as a witness in the new trial a pediatrician who is an expert in child abuse cases. He will testify, based upon his review of medical records, that petitioner's acts leading to the death of Tanya were intentional. No explanation is given as to why this information was not available at the time of the first trial. We find nothing in the affidavit presented to us to justify a decision denying a motion to dismiss under CrR 4.3(c)(3).

Accordingly, since the petitioner was not originally charged with premeditated murder—a related offense—and, as the facts existed at the time of the first trial to warrant such a charge, the State is now precluded from asserting it. We dismiss the information but do so without prejudice. The State is not barred by the doctrine of double

jeopardy from recharging petitioner with second degree murder, first degree manslaughter or second degree manslaughter.[3]

The protection against double jeopardy protects a citizen from being placed in the hazardous position of standing trial more than once for the same offense. *Green v. United States,* 355 U.S. 184, 187, 2 L. Ed. 2d 199, 78 S. Ct. 221, 6 A.L.R.2d 1119 (1957). If the appellate court reverses a conviction and remands for a new trial, the double jeopardy clause is ordinarily not offended. *United States v. Tateo,* 377 U.S. 463, 12 L. Ed. 2d 448, 84 S. Ct. 1587 (1964). Nor is the protection offended when the first trial is on a defective information. *State v. Burns,* 54 Wash. 113, 102 P. 886 (1909). However, if an appellate court reverses a conviction based upon insufficiency of the evidence, a retrial is not permissible under this doctrine. *Hudson v. Louisiana,* 450 U.S. 40, 67 L. Ed. 2d 30, 101 S. Ct. 970 (1981); *Burks v. United States,* 437 U.S. 1, 57 L. Ed. 2d 1, 98 S. Ct. 2141 (1978). If the reversal is not for insufficiency of evidence, the defendant may be retried for the convicted offense and any lesser included offenses. Defendant may not, however, be retried on an offense of a higher degree because he has implicitly been acquitted of the higher degrees of the crime. *See State v. Schoel,* 54 Wn.2d 388, 341 P.2d 481 (1959); *State v. Murphy,* 13 Wash. 229, 43 P. 44 (1895); 3 C. Torcia, *Wharton on Criminal Evidence* § 655 (13th ed. 1972).

In *Anderson I* our court concerned itself with three issues: (1) the speedy trial rule under CrR 3.3; (2) statements made by the defendant to a witness; and (3) whether the charge of first degree murder under RCW 9A.32-.030(1)(b) applied in fact situations where the acts alleged were aimed at, or intended and inflicted upon, a specific individual and no other. *State v. Anderson, supra* at 182. The facts deduced at trial were obviously necessary to dis-

---

[3]The lesser included offenses of second degree murder, first degree manslaughter and second degree manslaughter were all presented to the jury by instructions requested by petitioner and the State.

cuss all the issues.[4] However, it must be remembered that the petitioner's original attack on the information for the same reason upheld by this court on appeal was first made prior to any trial on the facts. The defense was well aware that only one person was involved and made this quite clear to the trial court. That motion to dismiss on the same grounds was also made at the close of the State's evidence and was again reiterated in a motion for arrest of judgment and/or a new trial.

The *Anderson* I majority unanimously upheld the petitioner's contention that it was error for the trial court to fail to grant Anderson's motion to dismiss the charge of first degree murder brought under RCW 9A.32.030(1)(b).[5] The unanimous court then continued, "This does not mean that the accused could not properly have been charged under other sections of RCW 9A.32. That is, however, a decision to be made by the prosecuting attorney." *Anderson* I, at 192. The court simply reversed the trial court's ruling with no instructions as to the disposition of the case.

Since RCW 9A.32 also covers the lesser included offense of murder in the second degree, and since this court was mindful of its rule, CrR 4.3, regarding joinder of offenses, the court obviously did not foresee that the prosecutor would again charge murder in the first degree, although by an alternate method.

This court, by its terminology, left the door open for the prosecutor to resubmit the lesser included offenses to a new jury. If the trial court had dismissed murder in the first

---

[4]*See United States v. Wilson*, 420 U.S. 332, 43 L. Ed. 2d 232, 95 S. Ct. 1013 (1975), for the proposition that the double jeopardy clause is not offended even though the order in the defendant's favor is based on facts outside the face of the indictment.

[5]The unanimous *Anderson* I court, in reversing defendant's conviction, held that the trial court should have dismissed the information. Had this been done, there would have been no bar to another prosecution since RCW 10.43.050 provides that no order of dismissal on the ground of a variance between the information and proof, or on the ground of any defect in such information, shall bar another prosecution for the same offense.

degree at the close of the State's case, the lesser included offenses would still have been properly before that jury. If our court had considered that double jeopardy would apply, or had we determined that Anderson should be acquitted due to insufficiency of the evidence, we would have sent the case back to the trial court with directions to dismiss the case against Anderson with prejudice and release him forthwith from custody.

Accordingly, the reversal entered in *Anderson* I was not based upon insufficiency of the evidence, but rather was based upon the inapplicability of the statute, RCW 9A.32-.030(1)(b), to the situation presented. The case law is clear that such a reversal and retrial with relation to the lesser included offenses does not offend the guaranty against double jeopardy. Thus, although we dismiss the information charging petitioner with premeditated murder under RCW 9A.32.030(1)(a), we do so without prejudice.

BRACHTENBACH, C.J., and STAFFORD, UTTER, DOLLIVER, and HICKS, JJ., concur.

DORE, J. (dissenting)—Petitioner's 2–year–old stepdaughter, Tanya Graff, was hospitalized as a result of burns she suffered while petitioner bathed her. Petitioner was charged with second degree assault in connection with the incident. Approximately 1 month later Tanya, still hospitalized, died. Petitioner was subsequently charged with first degree murder under RCW 9A.32.030(1)(b) which makes it a crime to cause the death of a person "[u]nder circumstances manifesting an extreme indifference to human life". Petitioner was also charged with first degree manslaughter, RCW 9A.32.060(1)(a), which charge was voluntarily dismissed by the prosecution. The jury convicted petitioner of first degree murder. This court reversed petitioner's conviction. *State v. Anderson*, 94 Wn.2d 176, 616 P.2d 612 (1980). We held that conviction under RCW 9A.32.030(1)(b) was improper because the conduct which caused the death was directed at a particular person.

The State then filed a new information charging petitioner with first degree premeditated murder pursuant to RCW 9A.32.030(1)(a) based upon the same scalding incident. Petitioner's motion to dismiss the charge was denied. I would have held that because the second first degree murder charge against the defendant is based on the *same facts* on which this court dismissed the prior murder charge, this constitutes double jeopardy. This charge should be dismissed once and for all with prejudice.

The double jeopardy clauses of the United States and Washington State Constitutions protect a citizen from being placed in the hazardous position of standing trial more than once for the same offense. *Green v. United States,* 355 U.S. 184, 2 L. Ed. 2d 199, 78 S. Ct. 221, 6 A.L.R.2d 1119 (1947). Thus, after a jury acquittal, the State may not file the information again and hope to prove its case to a second jury. If an appellate court reverses a conviction and remands for a new trial, the double jeopardy clause is ordinarily not offended. *United States v. Tateo,* 377 U.S. 463, 12 L. Ed. 2d 448, 84 S. Ct. 1587 (1964). If the appellate court reversal is based on *insufficiency of the evidence,* however, no retrial is *permissible. Hudson v. Louisiana,* 450 U.S. 40, 67 L. Ed. 2d 30, 101 S. Ct. 970 (1981); *Burks v. United States,* 437 U.S. 1, 57 L. Ed. 2d 1, 98 S. Ct. 2141 (1979).

Double jeopardy is not offended unless a defendant is tried a second time for the same offense. Petitioner contends that RCW 9A.32.030(1)(a) and (1)(b) describe alternative methods by which one can commit first degree murder; but, they constitute one offense. Therefore, petitioner would twice be placed in jeopardy if now tried for the same offense; *i.e.,* first degree murder pursuant to RCW 9A.32.030(1)(a). The State asserts that the subsections of the first degree murder statute describe separate offenses. Offenses are separate if the State must prove a fact in one offense which fact is unnecessary to prove the second offense. *Hattaway v. United States,* 399 F.2d 431 (5th Cir. 1968).

The language of the statute itself lends support to petitioner's assertion that one offense is created by RCW 9A.32.030(1). The three subsections describe, first, premeditated murder; second, murder as a result of extreme indifference to human life; and third, felony–murder. In construing the former first degree murder statute, this court held that premeditated first degree murder and first degree felony–murder were "alternative constituents of the same statutory offense; they do not constitute separate and distinct offenses which are repugnant to each other". *State v. Golladay,* 78 Wn.2d 121, 134, 470 P.2d 191 (1970). And in construing the former larceny statute, we found that the subsections describing the manners of committing that crime

> are joined in the disjunctive by "or"[.] Such language would import a legislative intent that . . . the . . . subsections are simply different ways in which property can be stolen . . .

*State v. Ladely,* 82 Wn.2d 172, 176, 509 P.2d 658 (1973). Each subsection of RCW 9A.32.030(1) is joined by the disjunctive "or". Based on the statute itself, I see no reason to construe the present statute in a manner inconsistent with our views on the prior statute.

Accordingly, I would hold that RCW 9A.32.030(1) constitutes one crime of first degree murder. The three subsections declare that there are three modes of committing that offense. For double jeopardy purposes, an accused may not be charged with murder pursuant to one subsection after an acquittal from a charge under any of the other subsections for the death of the same victim. Were we to hold that RCW 9A.32.030(1) describes three offenses, an accused could be convicted of three murders and sentenced upon each for the death of a single victim. I agree with the Supreme Court of Alaska which said:

> It would indeed be a strange system of justice that would allow [an] appellant to be sentenced to [multiple] life sentences for the killing of one person.

*Gray v. State,* 463 P.2d 897, 911–12 (Alaska 1970).

I am mindful that a recent United States Supreme Court decision seems to adopt the State's view that the test of single or multiple offenses is whether one crime requires proof of at least one fact which is unnecessary to prove the second crime. *Albernaz v. United States,* 450 U.S. 333, 67 L. Ed. 2d 275, 101 S. Ct. 1137 (1981).[6]

I would dismiss this case with prejudice on the double jeopardy clause found in our state constitution. Even without limiting the decision to state law, I think the same result would flow from a proper interpretation of the federal constitution. *Albernaz* is distinguishable. A separate question—that of multiple punishments—was before that court. Further, the *Blockburger* rule, as discussed in *Albernaz,* aids in the determination of multiple or single offenses when a court is faced with "two distinct statutory provisions". RCW 9A.32.030(1) can be viewed, grammatically as well as substantively, as one statutory provision.

As noted earlier, a retrial of an accused is not constitutionally permissible if an appellate court reversed a conviction based on *insufficiency* of the evidence. Petitioner contends that the court's prior reversal of his conviction was based upon such a determination, prohibiting retrial on the original information. The State argues that the reversal

---

[6]In *Albernaz v. United States, supra,* petitioners were convicted of violations of two statutory offenses—conspiracy to import marijuana and conspiracy to distribute marijuana. Consecutive sentences were received on each count. The length of each combined sentence exceeded the maximum 5-year sentence which could have been imposed for either violation. Among other things, petitioners contended that imposition of the sentences violated the federal constitution double jeopardy clause's prohibition against multiple punishments. In discussing whether offenses may be punished cumulatively, the court quoted from an earlier decision as follows:

> "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the *test to be applied to* determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States,* [284 U.S. 299], at 304 [(1932)].

*Albernaz v. United States, supra* at 337. Thus, in *Albernaz* there was no assertion that only one offense was committed; petitioners conceded that their activities violated "two distinct statutory provisions" of the federal criminal code (21 U.S.C. § 963, conspiracy to import, and 21 U.S.C. § 846, conspiracy to distribute).

was based on a defective information, the defect being that the information failed to describe a crime. Trial on a defective information does not place a defendant in jeopardy upon retrial. *State v. Burns,* 54 Wash. 113, 102 P. 886 (1909).

The original information charged petitioner with a violation of RCW 9A.32.030(1)(b) in that his conduct manifested "an extreme indifference to human life . . . [which] created a grave risk of death, thereby causing the death of Tanya Graff, a human being . . ." The information sets forth the proper elements of first degree murder under the section with which petitioner was charged. The "defect", then, was not in the information itself, but in the State's choice of the charging section.

A reviewing court may determine that the evidence is insufficient to support a guilty verdict. *Burks,* at page 11, explained:

> The appellate decision unmistakably meant that the [trial court] had erred in failing to grant a judgment of acquittal.

Retrial is permitted in those cases where, due to a defect in the proceeding (information or otherwise), the *guilt or innocence* of the defendant was *tainted.* If such consideration is not present, as when the State simply fails to prove its case, retrial is *not permitted.*

> When this [taint] occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished. . . .
> The same cannot be said when a defendant's conviction has been overturned due to a failure of proof at trial, in which case the prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble. Moreover, such an appellate reversal means that the government's case was so lacking that it should not have even been *submitted* to the jury. Since we necessarily afford absolute finality to a jury's *verdict* of acquittal—no matter how erroneous its decision—it is difficult to conceive how society has any greater interest in retrying a defendant when, on review,

it is decided as a matter of law that the jury could not properly have returned a verdict of guilty.

(Footnote omitted.) *Burks,* at 15–16.

The error in petitioner's case was the State's failure to charge him with the proper subsection of the first degree murder statute. This defect, however, did not taint the verdict such that retrial is appropriate. The case should never have been submitted to the jury because the State had failed to prove its case. Upon review, I looked at the facts of the case and determined that RCW 9A.32.030(1)(b) was inapplicable because petitioner's conduct was aimed at a specific individual, thereby failing to show "extreme indifference to human life". Thus, the evidence in the first *State v. Anderson* case, 94 Wn.2d 176, 616 P.2d 612 (1980), failed to support the jury verdict and reversal was based, as a matter of law, on insufficiency of the evidence.

The majority said at pages 741–42:

Accordingly, since the petitioner was not originally charged with premeditated murder—a related offense—and, as the facts existed at the time of the first trial to warrant such a charge, the State is now precluded from asserting it. We dismiss the information but do so without prejudice. The State is not barred by the doctrine of double jeopardy from recharging petitioner with second degree murder, first degree manslaughter or second degree manslaughter.

(Footnote omitted.)

I strongly disagree. If the State is barred from filing a first degree murder charge, it is most assuredly barred from charging him with a lesser included offense. If double jeopardy applies to first degree murder, it equally applies to second degree murder, first degree manslaughter or second degree manslaughter.

The majority stated at page 742:

However, if an appellate court reverses a conviction based upon insufficiency of the evidence, a retrial is not permissible under this doctrine. *Hudson v. Louisiana,* 450 U.S. 40, 67 L. Ed. 2d 30, 101 S. Ct. 970 (1981); *Burks v. United States,* 437 U.S. 1, 57 L. Ed. 2d 1, 98 S. Ct.

2141 (1978). If the reversal is not for insufficiency of evidence, the defendant may be retried for the convicted offense and any lesser included offenses.

However, from a review of the trial record in the first trial and the file on the second trial, it is clear that as only one person was involved in the subject death, charging the defendant under RCW 9A.32.030(1)(b) could never be proved. When this court dismissed the charge in *State v. Anderson, supra,* although it was not specifically stated, it obviously was because of "insufficiency of evidence". It never has, nor has it ever been, contended that the original *State v. Anderson* was dismissed on a defective information. The second *State v. Anderson* is based on an entirely new information, although based on precisely the same facts as set forth in the first information.

As the first *State v. Anderson* was based on insufficiency of the evidence, no retrial is permissible. *Hudson v. Louisiana, supra; Burks v. United States, supra.*

The majority apparently agrees with me in reference to first degree premeditated murder, saying in reference to again charging Anderson with first degree premeditated murder, that "the State is now precluded from asserting it". If first degree murder is precluded, necessarily any and all lesser included degrees must be prohibited. *See* RCW 10.43.050 which provides as follows:

> No order of dismissal or directed verdict of not guilty on the ground of a variance between the indictment or information and the proof, or on the ground of any defect in such indictment or information, shall bar another prosecution for the same offense. Whenever a defendant shall be acquitted or convicted upon an indictment or information charging a crime consisting of different degrees, *he cannot be proceeded against or tried for the same crime in another degree, nor for an attempt to commit such crime, or any degree thereof.*

(Italics mine.)

We have held that where defendant was brought to trial upon a sufficient information and discharged at close of State's case, he has been once in jeopardy. *State v. Hubbell,*

18 Wash. 482, 51 P. 1039 (1898); *State v. Dye,* 81 Wash. 388, 142 P. 873 (1914).

Even if we had held double jeopardy not applicable to petitioner's situation, dismissal of the information is mandated on nonconstitutional grounds; that is, the State's failure to comply with Superior Court Criminal Rule 4.3 relating to joinder of offenses. Two offenses may be joined in one charge if they are based on the same conduct. CrR 4.3(a)(2). These are "related" offenses if they are based on the same conduct and are within the jurisdiction and venue of the same court. CrR 4.3(c)(1). The bathtub scalding of Tanya was the tragic incident which gave rise to both charges. Clearly, the two charges brought against petitioner, one based on RCW 9A.32.030(1)(b) and the other based on RCW 9A.32.030(1)(a) are related and could have been joined in the same information. *State v. Mitchell,* 29 Wn.2d 468, 188 P.2d 88 (1947). CrR 4.3(c)(3) discusses the effect of the State's failure to join related offenses.

> A defendant who has been tried for one offense may thereafter move to dismiss a charge for a related offense . . . The motion to dismiss . . . shall be granted unless the court determines that because the prosecuting attorney was unaware of the facts constituting the related offense or did not have sufficient evidence to warrant trying this offense at the time of the first trial, or for some other reason, the ends of justice would be defeated if the motion were granted.

The State now asserts that it has developed new evidence by which it can prove premeditated murder, whereas such evidence was lacking at the time of the prior trial. The "new evidence" presented at oral argument by way of affidavit concerns relationships between petitioner and his prior wives and others. The most recent incident described in the State's affidavit took place in 1974 which was prior to the birth of Tanya Graff. I fail to see how anything contained in the affidavit can establish premeditation in regard to the death of Tanya. The State's affidavit also avers that the State plans to call as a witness at the new trial a pediatrician, an expert in child abuse cases, who will testify,

based on his review of medical records, that petitioner's acts which led to the death of Tanya were intentional. No explanation is given why this theory of the case was not pursued at the time of the earlier trial so that an amended information could have been filed adding the charge of first degree premeditated murder. A careful reading of the prosecutor's affidavits fails to indicate a scintilla of evidence that there is new evidence contemplated by CrR 4.3(c)(3). Therefore, I would also dismiss under such court rule.

The majority further mystifies me by also agreeing that the second charge should be dismissed under CrR 4.3(c)(3) because the prosecutor failed to charge defendant under both RCW 9A.32.030(1)(a) and (b), saying "We find nothing in the affidavit presented to us to justify a decision denying a motion to dismiss under CrR 4.3(c)(3)". If the second charge against the defendant is dismissed pursuant to CrR 4.3(c)(3), the dismissal is *with* prejudice and cannot be refiled.

I find double jeopardy and would dismiss the charge against defendant *with* prejudice.[7]

ROSELLINI and WILLIAMS, JJ., concur with DORE, J.

Reconsideration denied March 2, 1982.

---

[7]The defendant has been residing in the penitentiary since July 1977. The Supreme Court set aside his conviction in August 1980 and after another year and a half has gone by, he still languishes in jail, without bail being set. The majority has ruled out the filing of any charge against the defendant except a second degree murder or manslaughter charge.

It is time the trial judge and prosecutor proceed to expedite completion of this case at the earliest possible time. I strongly urge that the trial court immediately reexamine the possibility of bail for the defendant, pending possible filing of new charges.